Denton Gurnee

*v.*

The City of Chicago.

1. Collector's Warrant—*of the signing thereof*. When the statute requires a collector's warrant to be *signed* by certain officers, and such warrant bears their respective signatures, but, preceding one of the signatures, the word "*countersigned*" appears, it is nevertheless a proper signing of the instrument, and forms no objection to it. The law is answered, when the signatures of the officers named in the statute appear upon the instrument.

2. Oath—*of commissioners, taken before an ordinance becomes operative, under which they have sworn to a faithful performance of duty, no irregularity.* When the commissioners appointed to make an assessment have, prior to the time when the ordinance authorizing such assessment has become a law, taken the oath required by the statute, that they will faithfully perform their duties, under such ordinance, that is not an irregularity that will vitiate their subsequent proceedings.

3. The taking of the oath was prior to any proceeding to make the assessment, and was, therefore, a literal compliance with the statute; and it is no objection that it was taken at an earlier period than the law required. Had the requirement to take the oath been contained in the ordinance, then such action would have been premature and unauthorized.

4. COMMISSIONERS—*not required to report damages accruing from the repair of streets.* The provisions of section six, chapter seven, of the city charter, in no wise relate to the repair of streets, or other public property; nor is there any requirement anywhere to be found, that the commissioners shall report damages which may accrue from repairing a street. Such a thing could only occur in event the street should be widened.

5. ASSESSMENT—*to pay a contingent liability of the corporation in suit pending, void.* Where ten per cent. of an assessment had been levied, to pay any damages which might be recovered against the city, in a suit then pending, and the liability of the city to pay such damages was contingent on the event of the suit, such portion of the levy is unauthorized and void.

6. SAME—*misdescription of certain lots, does not affect the others.* An assessment made on two or three lots by a wrong description, in no wise affects the other lots in their assessment. These defects can be obviated by a re-assessment.

7. SAME—*power to chang pavements.* The power to remove an old pavement, and put in its place a new one of a different description, is fully conferred by section one of the act of 1865, Priv. Laws, 275.

8. NOTICE *of application to confirm assessment.* When the notice of the application for the confirmation is published, the fact that such notice was not certified to the common council, does not affect the validity of the confirmation.

APPEAL from the Superior Court of Chicago; the Hon. JOHN M. WILSON, Chief Justice, presiding.

This is an appeal from a judgment rendered in the court below upon a special assessment for curbing, grading and paving, with wooden block pavement, Van Buren street, from the west line of Michigan avenue to the east side of State street, in the city of Chicago.

All of the material facts in the case are fully set forth in the opinion of the court.

Mr. J. L. THOMSON and Messrs. WAITE, TOWNE & CLARK, for the appellant.

Mr. S. A. IRVIN, for the appellee.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

It is first objected that the collector's warrant was not signed by the city comptroller. By chapter nine, section seven of the city charter, the warrant is required to be signed by the mayor, comptroller and city clerk. We find their names to this warrant, but immediately preceding the name of Kimball, comptroller, is the word "countersigned." We are unable to appreciate this objection. Where lexicographers are consulted, we find that the word means to sign what has already been signed by a superior; to authenticate by an additional signature. If Kimball's name had followed that of the mayor, who was his superior officer, it would, under this definition, have been a counter signature, without the use of the preceding word, as though it had been written. The scope of the objection would seem, then, to be, that all of these officers must sign first, or before it was signed by another. This could not be done. But the law is answered where the instrument is authenticated by the signatures of the officers named in the statute, and that has been done in this case.

It is again objected that the commissioners were not sworn in the manner required by the charter. Chapter seven, sections five and six, requires that the commissioners, before they proceed to make the assessment, shall be sworn to execute their duties to the best of their ability, and to give six days' notice of the time and place of meeting to make the assessment. The mayor approved the ordinance requiring this improvement on the 30th of September, 1865, while the oath was taken by the commissioners on the 28th day of that month. The report recommending this improvement was made by the commissioners, and it was passed by the common council on the 25th of September, but it was not presented to or approved by the mayor until the 30th. The ordinance did not, therefore, become complete and operative until two days after the commissioners had taken the oath to faithfully discharge their duty under it.

In taking the oath there was a literal compliance with the law. It was taken before proceeding to make the assessment. And, although the ordinance had not been approved, still it had passed the common council, and was a proceeding then in progress, and all that could be said is that it was taken at an earlier period than the law required. If the ordinance had not passed the council, it would probably have been nugatory, but, in this case, it only awaited the signature of the mayor to render the ordinance binding. If the authority or requirement to take the oath had been alone contained in the ordinance, then it would have been premature and unauthorized; but the oath is required by the statute, and it does not require it to be taken after the approval of the ordinance. Again, we do not see why an oath taken on the 28th is not as binding in conscience or in law as one taken on the 30th, especially when the ordinance requiring the performance of the duty only awaits the signature of the mayor, which was obtained within the time required by the statute.

It is again objected that the commissioners made no assessment of damages resulting to property holders by making the improvement. The sixth section of chapter seven of the city charter prescribed the duties of the commissioners in assessing the damages. It requires them to hold their meetings for the purpose in some public place in the city, to be specified in the notice, and all persons interested are authorized to appear and be heard. They are also required to view the premises to be condemned, and to hear evidence, if offered, for the purpose of ascertaining the true damages that may be sustained, or benefits conferred, by reason of the improvement. It will be observed, by an examination of the preceding section, that these provisions relate to the appropriation of property for making public improvements. And, for that purpose, they are eminently just and proper, not to say essential; but they in no wise relate to the repair of streets or other public property. We have been referred to no provision of the charter which requires damages that may accrue from repairing a street to be reported by the commissioners, nor have we been able to find

any such requirement. Nor can we imagine that such a thing could occur, unless the street should be widened. And yet, benefits naturally accrue to the adjoining property holders in different proportions, owing to difference in locality in their property, and to various other circumstances. And the statute justly requires property holders to contribute to the improvement in proportion to the benefit they receive; and the commissioners have so reported in this case. This proceeding is governed by the act of 1865, so far as it alters the provisions of the previous act, and this assessment in this respect conforms to its requirements.

It is also insisted that the assessment is void for the reason that a portion of this assessment was levied to meet damages that the city may have to pay in a suit then pending against the city, in which it is claimed that the city was using without legal authority the patent for the Nicholson pavement. It does not appear from the assessment or proof in the case that such a levy was made, but it was admitted that the sum of $105.75 was levied for the costs of the proceedings. So far as the record discloses this may be legitimate and proper. It was also admitted that a sum not exceeding ten per cent. of the whole assessment had been levied and included, to pay any damages which might be recovered against the city in that suit, and that the liability of the city to pay such damages was contingent on the event of the suit.

We are at a loss to understand to what power, or class of powers, it is claimed this right belongs. The power, so far as we can see, is not granted by any provision of the city charter. And it is not probable that the legislature would confer, either directly or otherwise, power on the city to violate the legal rights of others and then levy taxes to pay the damages before they are found. We have been referred to no provision conferring the power, and we must conclude that none exists, but that this portion of the levy is unauthorized and void. If the action should be defeated what then becomes of the money thus collected? To whom or for what purpose will it be paid? The statute which creates the city and confers power on its

officers and agents is the warrant for the action of these commissioners, and when they exceed the power thus conferred their acts are void and cannot be enforced. This portion of the levy is without legal sanction, and cannot be sustained by the courts.

To authorize the collection of a proper proportion of the expense of this improvement, from the property against which the judgment was asked, a re-assessment should be made. See *Ward* v. *The City of Chicago*, 36 Ill. 9.

And the same is true of the lots which were inaccurately described. These defects can only be obviated in that manner. By a re-assessment they can be properly described and the proportion of the burden can be imposed upon them. The misdescription of these lots in no wise affected the other lots in their assessment.

We have no doubt, that the power is conferred by the statute, to remove an old pavement and replace it with a new one of a different description. The power is conferred by the first section of the act of 1865 (Private Laws, 275), where the city is authorized to repair or pave the streets, which authorizes this improvement. This we think is clear.

It appears, that the notice of the application for the confirmation roll was published. If this is true, and there seems to be no doubt of its truth, we are at a loss to perceive how the fact that the notice was not certified to the common council, could affect the validity of the confirmation. It is the requisite legal notice, and not the certificate of the notice, that supports the confirmation. The notice is the fact and the certificate is the evidence of the fact. We are not aware, that a judgment of default was ever set aside where there was a sufficient service of the process, although the officer may have omitted to indorse it on the writ, if the return was afterward properly made; and no difference is perceived in the two cases.

The judgment of the court below, however, must, for the errors indicated, be reversed and the cause remanded.

*Judgment reversed.*