THE STATE, *ex rel.* CARLOS S. GREELEY *et al.*, Appellant, *v.* THE CITY OF ST. LOUIS *et al.*, Respondents.

March 21, 1876.

1. A return of the marshal, in proceedings before the land commisioner, that he "executed the writ by *having had personal service* on the following named defendants," naming them, is insufficient.

2. It should appear on the face of the proceeding that the land commissioner examined the jurors and found them disinterested and qualified according to law.

3. In proceedings to open a street, a jury cannot arbitrarily select a portion of a street, or of the city, as a taxing district, and assess benefits against it, unless, perhaps, in the case of abutters. Such action is unconstitutional.

4. After a rehearing is had, an appeal may be taken without a motion for a new trial having intervened.

APPEAL from St. Louis Circuit Court.
*Proceedings, verdict, and judgment quashed.*

*Leverett Bell* and *W. H. Horner*, for respondents, cited: Cowers *v.* Iron Mountain R. R. Co., 48 Mo. 556; Papin *v.* Massey, 27 Mo. 453; Wall *v.* Nay, 30 Mo. 494; Acts of Missouri, 1870, 478, sec. 2; Blaisdell *v.* Steamboat Pope, 19 Mo. 159; Stewart *v.* Stringer, 45 Mo. 116; Muldoon *v.* Bates, 5 Mo. 214; Wag. Stat., secs. 19, 20, p. 1036; Tyler *v.* City, 56 Mo.; State *ex rel. v.* City, 52 Mo. 574; Egyptian Levee Co. *v.* Hardin, 27 Mo. 495; Uhrig *v.* City, 44 Mo. 459; Newby *v.* Platte, 25 Mo. 264; People *v.* Mayor of Brooklyn, 4 Comst. (N. Y.) 419.

*Holmes & Holmes*, for appellant, cited: Ells *v.* Pacific R. R. Co., 51 Mo. 200; Leslie *v.* City of St. Louis, 47 Mo. 474; Anderson *v.* City of St. Louis, 47 Mo. 479; Ruggles *v.* Collier, 43 Mo. 353; Hewitt *v.* Weathersby, 57 Mo. 276; Huff *v.* Shepard, 58 Mo. 246; 2 Dill. on Mun. Corp., sec. 471, p. 571; Session Acts 1870, p. 478, sec. 2; City of Boonville *v.* Armrod, 26 Mo. 193; People *v.* Brighton, 20 Mich. 57; Nichols *v.* Bridgeport, 23 Conn. 208; Farmington *v.* Morgan, 20 Wend. 207; Dickey *v.* Tennison, 27 Mo. 373; Smith's Admr. *v.* Rollins, 25 Mo. 408; Waddington *v.* City of St. Louis, 14 Mo. 190.

BAKEWELL, J., delivered the opinion of the court.

This was a proceeding to vacate the proceedings of the city of St. Louis and the land commissioner, in the matter of opening Franklin avenue, in the city of St. Louis, from the western boundary line of Stoddard addition to the eastern boundary line of school section No. 16, under ordinance 4724, approved July 24, 1860.

The relators alleged in their petition that they owned a lot, of 250 feet, on the south side of Franklin avenue, and a lot, of fifty feet, on the north line of Franklin avenue; that, in virtue of the revised charter of 1870, and the ordinance aforesaid, respondents, on January 11, 1873, commenced proceedings to open said avenue; issued notice, and proceeded to impanel a pretended jury, which, on March 8, 1873, rendered a verdict assessing the aggregate

value of the property taken at $18,387, of which $1,838.70 was assessed against the city, and $16,548.30 against persons supposed to be benefited, of which sum there was assessed against relators and their property aforesaid $940.80 ; which verdict was confirmed by the city council, and judgment rendered therefor by the land commissioner. The petition then sets out that the proceedings were irregular in many respects, which are fully set forth, and prays that the record may be inspected by the Circuit Court, and the whole proceedings quashed on account of these alleged errors. The writ issued ; and, after a reassignment of errors by petitioners, on hearing, the judgment and proceedings were, by the Circuit Court, quashed ; but, on rehearing, this judgment was set aside, and the proceedings and judgment of the city and land commissioner were affirmed. Relators excepted to the granting a motion for a rehearing, and to the action of the court in overruling their assignment of errors set out in their petition, and in affirming the proceedings and judgment of the land commissioner ; and they bring the case here by appeal.

Respondents insist that, no motion for a new trial having been made by appellants below, the judgment of the court below should be affirmed. We do not so think. There was no necessity for any such motion to give to the Circuit Court an opportunity of correcting any errors it had committed. The reassignment of errrors sufficiently shows the points insisted upon below ; and, after giving judgment for appellants, granting a rehearing and reversing its judgment, it may be presumed that the Circuit Court had every opportunity of correcting errors, and acted with matured judgment, after full consideration of every material point in the case.

The exceptions to the proceedings before the land commissioner are numerous. The following are those upon which appellants seem most to insist :

1. It is claimed that the land commissioner acquired no

jurisdiction of the relators or their property, there having been no service of notice on them as required by law; and, further, that, of the ten persons whose property it was proposed to take for the opening of Franklin avenue, only two were legally served. The record shows nothing as to any voluntary appearance, and, as to relators, they did not appear, as far as the record shows.

The law requires (Acts 1870, p. 478, sec. 2) that six days' written or printed notice shall be given to the person whose property is to be condemned, which notice shall be served by the city marshal, either by delivering the same to such person, or by leaving a copy thereof at the usual place of abode of such person, with some member of the family over the age of fifteen years; or, if the owner of any such property is unknown, or absent from the city, or cannot be served in this manner, such notice shall be published at least four weeks in the two daily papers doing the city printing.

The return on the original papers sent him shows that the notice of the land commissioner was issued against eighty-five persons, including relators. The return of the marshal is in these words: "Executed the within writ in the city of St. Louis, on January 16, 17, and 18, 1873, by *having had personal service on the following named defendants.*" Then follow the names of relators and forty-three others.

We do not think this return was sufficient to give the land commissioner jurisdiction of those persons whose property was to be condemned. Jurisdiction over a person can never be acquired, except in case of consent, unless by a method which the law specifically provides. We do not know what may have been the deputy marshal's idea of "having had personal service." He may have considered an offer to read the notice, or actual reading of it, a personal service, as is the practice in serving a subpoena. There is nothing to show that the notice was delivered to defendants, or left at their respective places of abode, as the law

requires. To this it may, perhaps, be replied that relators do not come within the class whose property was to be condemned, but are of the class whose property was to be assessed to pay damages; and that the provisions of the law, as to notice to this latter class, have been substantially complied with. This can hardly be material, as, if those whose property it was proposed to take were not served, and did not appear, the proceedings must necessarily be void, not only as to them, but also as to those assessed for benefits. It appears, however, that the notice to relators, who were of the class assessed benefits, was not in compliance with the law. In regard to notice to this class the law says, in the section quoted above: "Such notice shall be served or published for the same terms of time, for like causes, and with like effects, respectively, as is provided for notices in cases of condemnation." It is true that it is not expressly said that such notice shall be served in the same manner in the case of the latter class of persons as in the case of the former; but no other way of serving it is prescribed, and it is the obvious intention and meaning of the law that the service, as to both classes, shall be made in the same way. If this be not a correct interpretation of the law, then it provides no manner whatever for serving notice upon those whose property it is proposed to assess, which would be absurd, as they are likely to be quite as much affected by the proceedings as those whose property is directly taken, and are, in some instances, much more seriously affected by them than the property holder whose real estate it is the direct object of the proceedings to condemn.

We are of opinion, therefore, that there is no evidence that legal notice of these proceedings was ever given to the relators and the forty-three other defendants, as to whom the return of the marshal is the same.

2. Another objection made by the relators is that it does not appear that the jurors impaneled in said proceedings

were, each and all of them, "disinterested freeholders of the city of St. Louis."

The law under which these proceedings were had requires "a jury of six disinterested freeholders of the city." Acts of 1870, p. 478, sec. 1. The law in regard to all special proceedings in derogation of private rights requires the jurisdiction and regularity to be manifest on the face of the record, and no substantial omission can be supplied by intendment. A private citizen might as well assume to act in lieu of a judicial officer, as any but a disinterested freeholder of the city to sit on this inquest. Now, the minutes of the commissioner do not state that he had examined the jurors and found them qualified. The *venire* commands the marshal to summon "twenty-four good and lawful men, disinterested freeholders of the city of St. Louis;" the return states that he has summoned the "good and lawful men, disinterested freeholders;" it does not say that they are of the city. The minutes of the land commissioner say that "the following good and lawful freeholders of the city of St. Louis" were summoned, setting forth their names, and that six, whose names are given, were examined and accepted, and sworn as jurors. But it nowhere appears that the jurors were, on examination, found to be disinterested, as the law requires. The verdict describes them as "six respectable freeholders of the city of St. Louis, and resident therein." This objection should, we think, be sustained.

3. The law under which these proceedings were had provides that the jury is to ascertain the actual value of the land proposed to be taken for the opening, and for the payment of the damages or compensation for that value. Benefits are to be assessed against the city for the public use generally, not to exceed one-tenth of the whole award, "and the balance against the owner or owners of the property benefited by the opening of such street, according to the value of the property so assessed, and in proportion to

the benefits such property respectively received from the proposed improvement, not to be less than to the middle of the adjoining block, or, if not laid out into blocks, then to the depth of not less than 150 feet, running back from the line of such street or other place as is proposed to be opened."

Under this authority the ordinance (No. 4724) defines the street proposed to be opened as "Franklin avenue, from the western boundary of Stoddard addition to the eastern boundary of school section 16."

Franklin avenue is a street of St. Louis, extending from Grand avenue to Broadway, a distance of about three miles. The portion opened by these proceedings is a few hundred yards in length. The ordinance describes the proposed opening as one "to connect with the termination of the street as already laid out and opened, east and west of the proposed opening." The land of relators was on the line of this street, but not within the portion which these proceedings were instituted to open. The verdict of the jury shows that a plat was made and laid before them, by the city engineer, of Franklin avenue, from Leffingwell to Grand avenue, a distance of over a mile, including the proposed opening, about equidistant from those two streets, and that, along their whole length, the jury assessed the value of the property taken, and then assessed benefits against the property holders fronting on Frankling avenue, between Leffingwell and Grand avenues, for a depth of one-half of the blocks, or of 150 feet from the line of the street.

It is contended by relators that this could not lawfully be done. That this was not a local assessment within a district defined by law, and in due proportion, and to the extent of such benefits, and that the jury could not arbitrarily single out the property holders along the line of a portion of Franklin avenue from the mass of their fellow-citizens, and impose a tax upon them for a benefit common to the city. It is maintained that to do so was a violation of the Constitution of this State and of the United States.

Two questions arise : First, whether such action on the part of the jury was warranted by the law which we have recited ; and, second, whether, if they correctly interpreted the law, such a statute is in violation of constitutional provisions.

That the expense of such improvements may be assessed upon the property benefited, found by a jury to be benefited, or legislatively declared to be benefited, and that it is not necessary to confine it to the abutters alone, according to their frontage or according to the area of their lots, is a proposition as to which we entertain no doubt. This may be done in the absence of some special restraining constitutional provision on the subject, and there is no such special provision in the Constitution of our State. Dill. on Mun. Corp., sec. 596. In fact, whether it would be competent for the Legislature to place the whole burden upon the abutters is a question involving serious doubts. Cooley on Const. Lim. 508. But this verdict, if sustained, would establish the principle that a jury, in cases of this kind, can arbitrarily select a portion of a street, or a portion of the city, as a taxing district, and assess benefits against it. It has been held competent for the Legislative power to make an entire street a taxing district for a purpose of this kind, but I am not aware that any authority can be cited maintaining the constitutionality of a law giving to any man, or body of men, the right arbitrarily to lay out a portion of the street improved as a district alone to bear the burden of the improvement, unless in the case of abutters upon the improvement itself. Taxation must be uniform. The Constitution of every State in the Union contains some provision to that effect. If, then, the law under which this jury claimed to act must be so interpreted as to sanction their proceedings in this respect, it would seem to be unconstitutional.

But the law, by its terms, gives no such authority. It provides that the owner or owners of property benefited by the opening shall all be assessed for a depth of not less

than half a block, or 150 feet, as the case may be, along the entire line of the street. It does not say that the jury shall not go back more than half a block, or more than 150 feet, but it compels them to go back that depth, and to assess along the entire street. The jury have manifestly misinterpreted the law, in that they have confined their finding to a depth of half a block, or 150 feet where there is no block, and have arbitrarily confined their assessment to a portion only of the street improved.

For these reasons we think the judgment of the Circuit Court should be reversed, and the proceedings herein before the land commissioner, and the verdict and judgment thereon, should be annulled and held for naught. The proceedings before the land commissioner and the verdict and judgment are quashed. The other judges concur.