STATE ex rel. JOHANNA H. WHEELER and Others v. DISTRICT COURT OF RAMSEY COUNTY and Another.[1]

June 25, 1900.

Nos. 12,039—(23).

| 80 | 293 |
|----|-----|
| 82 | 398 |

## City of St. Paul—Assessment for Paving Street—Benefit to Abutting Property—Paving Street Intersections.

In a proceeding instituted under the charter of the city of St. Paul to obtain judgment for the amount of an assessment on account of paving a street, the court found from the evidence that it was the finding and judgment of the board of public works, which board makes the assessment in the first instance, that the real property abutting upon that part of the street which was to be paved was specially benefited, at least, to the extent of the entire cost; that such benefit was wholly confined to such abutting property; and that all of said property (that is, each lot) was uniformly and equally benefited per front foot. On this finding or judgment said board assessed the cost of the improvement upon the abutting property uniformly and at the same amount for each foot of lot frontage. It is not contended that this finding is unsupported by the evidence. In view of the finding and judgment, and the rule established in a number of cases in this court as to the conclusiveness of the same, it is *held* that the claim of counsel that the assessment was made arbitrarily upon a front-foot basis, and without regard to benefits, is without foundation; and it is *held*, further, that the conclusive character of this finding and judgment is not affected or overturned by the mere fact that in making the assessment the board ignored the fact that the improvement did not include the paving of street intersections on the south half of the same,

[1] Reported in 83 N. W. 183.

but did include such cost as to all intersections on the north half, or, in other words, by the mere fact that the intersections first mentioned were, for some unexplained reason, not paved under this contract, while those last mentioned were paved.

## Same—Presumption as to Action of Board of Public Works.

The presumption is that the board of public works has exercised its proper judgment in levying an assessment for any particular local improvement, and until something appears in the record itself which amounts to and demonstrates a mistake of fact, and of an affirmative nature, by way of evidence to the contrary, the action of the board is final and conclusive, except in case of fraud, or when it appears that an illegal principle or erroneous rule of law has been applied.

## Occupation of Street by Street Railway—Agreement to Pave.

It was admitted at the trial that the street-railway company occupied the street with a single track for a distance of about three hundred feet, and that no deduction on the assessment had been made on account thereof. *Held* that, to make the point available, it was, at least, essential for the objectors to show that the company, when obtaining the right to use the street, had agreed to pave that part over which it actually ran its cars.

## Fund for Repair and Maintenance.

Under the guise of paying the cost of constructing a pavement, a municipal corporation cannot collect a fund in advance, to be used at some indefinite time, for the repair and maintenance of such pavement.

## Contract to Repair—Guaranty.

The contract in question, for paving the street and keeping it in repair, examined, and the agreement to repair construed to be nothing more than a guaranty of the quality of the workmanship and material, and not a general obligation to make repairs, irrespective of the causes making repairs necessary.

## Assessment for Repaving Street.

Unless restrained by the charter, under which the power to impose special assessments upon property specially benefited thereby is conferred upon a municipal corporation, that power is not exhausted when one improvement is made. It is a continuing power, and whenever its exercise again becomes necessary, by reason of the destruction or inutility of the original improvement, it may again be exerted. This rule is applicable to the city of St. Paul, which is empowered by its charter, and without limitation, to make assessments upon specially benefited property for the cost of "paving" any street, levee, alley, or highway.

## Same—Charters of Other Cities.

The fact that the charters of one or more cities in this state expressly grant authority to "repave" as well as to "pave" cannot be accepted as conclusive proof that the legislature intended to abrogate the general rule, as above stated, in cities where the charters are silent on the subject of repaving.

Certiorari to the district court for Ramsey county and Honorable Charles E. Otis, a judge thereof, to review an order of said court overruling the objections of relators to an assessment for street paving, made by the board of public works of the city of St. Paul, and directing judgment against the property of relators. Writ quashed.

*Bishop H. Schriber* and *Ambrose Tighe,* for relators.

This proceeding is the taking of property without due process of law. See State v. District Court, 29 Minn. 62; State v. District Court, 51 Minn. 539. The exaction from the owner of private property of the cost of a public improvement in substantial excess of the benefits accruing is, to the extent of such excess, a taking, under the guise of taxation, of private property for public use without compensation, and is a violation of the fourteenth amendment to the federal constitution. Village of Norwood v. Baker, 172 U. S. 269; Hutcheson v. Storrie, 92 Tex. 685; Asberry v. City, 91 Va. 562; City v. Chapin, 112 Mich. 588; Thomas v. Gain, 35 Mich. 155; Tidewater v. Coster, 18 N. J. Eq. 518. All intersecting streets should have been considered as property benefited. The intersections actually paved were a special benefit to intersecting streets. In any event, the corner lots which abut both on Cedar street and the intersecting streets, where the intersections were paved, should pay a greater proportion of the cost of the improvement than lots which have a frontage on Cedar street only. The fee of these lots extends not only to the center of Cedar street, but to the center of the intersecting streets, while the fee of inside lots extends only to the center of Cedar street. It was error for the board of public works to ignore the fact that the cost of the improvement did not include the paving of intersecting streets upon the south half of the improvement, or all south of Eighth street; and did include the cost of paving all intersecting and abutting streets on the north

half of the improvement, or from Eighth street to Summit avenue, both inclusive.

The exemption of the street-railway company from any share of the cost of the improvement, vitiates the assessment. See City v. Prescott, 51 La. An. 1895, 46 L. R. A. 193, and notes.

The contract for the improvement embraces an independent agreement to maintain and keep the street in repair for a period of ten years. The following cases hold contracts similar to this to embrace an independent agreement for repairs, and not to be a guaranty merely: Portland v. Bituminous, 33 Ore. 307; Verdin v. City, 131 Mo. 26; Fehler v. Gosnell, 99 Ky. 380; Bullitt v. Selvage, 20 Ky. L. 599; People v. Maher, 56 Hun, 81; McAllister v. City, 9 Wash. 272; Boyd v. City, 92 Wis. 456; Brown v. Jenks, 98 Cal. 10; Excelsior v. Leach (Cal.) 34 Pac. 116; Partridge v. Lucas, 99 Cal. 519. The city has no authority to levy an assessment for repairing a public street. Statutes conferring powers of taxation are to be strictly construed. 2 Dillon, Mun. Corp. (4th Ed.) § 763; Mayor v. Hartridge, 8 Ga. 23; Kyle v. Malin, 8 Ind. 34; Orange v. City, 17 Grat. (Va.) 176; Black, Interp. Laws, §§ 113, 115, 119; Cooley, Tax. 609. Legislatures and the courts generally recognize that paving and repaving are different sorts of public improvements. Hammett v. Philadelphia, 65 Pa. St. 146; Appeal of the Protestant Orphan Asylum, 111 Pa. St. 135; City of Beck, 128 Pa. St. 147; City v. Segelbaum, 151 Pa. St. 172; Leake v. City, 171 Pa. St. 125; In matter of Phillips, 60 N. Y. 16; In matter of Garvey, 77 N. Y. 523; In matter of Grube, 81 N. Y. 139; Jex v. Mayor, 103 N. Y. 536; In matter of Smith, 99 N. Y. 424; Gilmore v. City, 121 N. Y. 561; City v. Palmer, 67 Iowa, 681; Boyd v. City, supra; Adams v. City, 105 Wis. 363; Dickinson v. City, 111 Mich. 480; Burckhardt v. City, 103 Ga. 302; Bradley v. McAtee, 7 Bush, 667; Holland v. Mayor, 11 Md. 186; Robertson v. City, 55 Neb. 718; Chicago v. Sheldon, 9 Wall. 50. The successive acts for the government of St. Paul are persistently silent on the subject of repaving. On the other hand, in respect to Minneapolis and Stillwater, the history of legislation has been different.

*James E. Markham* and *Franklin H. Griggs*, for respondents.

The assessment was not one arbitrarily made according to front-

age and without regard to benefits, but was properly levied within the rule prescribed by the charter. State v. District Court, 29 Minn. 62; State v. District Court, 33 Minn. 295; State v. District Court, 68 Minn. 242. The railway company could not have been assessed for any part of the cost. The assessment is not rendered invalid by the terms of the contract, whether it provides simply for a guaranty of the payment or contains provisions for what may be termed repairs. The so-called repair clause is at most a mere guaranty. City v. Hanson, 60 Kan. 833; Brown v. Jenks, 98 Cal. 10; City v. Henderson, 5 Bush, 515, 520; City v. Dressman, 6 Bush, 210, 214; Osburn v. City, 104 Iowa, 160; City v. Trustees, 66 Hun, 179; Barber v. Ullman, 137 Mo. 543; Seaboard v. Woesten, 147 Mo. 467; Robertson v. City, 55 Neb. 718; Gosnell v. City, 14 Ky. L. 719; Cole v. People, 161 Ill. 16; Latham v. Village, 168 Ill. 153; State v. Inhabitants, 60 N. J. L. 394; Allen v. City, 107 Iowa, 90.

Even if the repair clause be construed otherwise than as a guaranty, it is still an appropriate provision in view of the charter. Allen v. City, supra; City v. Portland, 44 L. R. A. 527, note. If there is here an assessment for repairs, which is not conceded, it is properly included in the assessment for the cost of the original improvement. State v. District Court, 29 Minn. 62; State v. District Court, 33 Minn. 295; State v. District Court, 33 Minn. 164.

The authority to pave is continuing, and applies as well to a repavement or the relaying of an old pavement as to an original improvement. 2 Dillon, Mun. Corp. (4th Ed.) §§ 686, 760; Koons v. Lucas, 52 Iowa, 177; McCormack v. Patchin, 53 Mo. 33; Farrar v. City, 80 Mo. 379; Estes v. Owen, 90 Mo. 113; Municipality v. Dunn, 10 La. An. 57; Karst v. St. Paul, S. & T. F. R. Co., 22 Minn. 118.

*Squires & Begg*, on behalf of the Warren-Scharf Asphalt Paving Company, filed a brief in support of the assessment.

The legislature has power to impose the burden of repaving a street on the owners of property abutting thereon. Sheley v. City, 45 Mich. 431; State v. Reis, 38 Minn. 371; Broadway v. McAtee, 8 Bush, 508; Bradley v. McAtee, 7 Bush, 667; State v. Mayor, 48 N. J. L. 101; McCormack v. Patchin, 53 Mo. 33; Wilkins v. City, 46 Mich. 120; Williams v. Mayor, 2 Mich. 560; Willard v. Presbury, 14 Wall.

676. The city has authority to levy an assessment on abutting property for the cost of paving anew a public street which has already been paved at the expense of such abutting property. 2 Dillon, Mun. Corp. (4th Ed.) §§ 686, 780; Karst v. St. Paul, S. & T. F. R. Co., 22 Minn. 118; Gurnee v. City, 40 Ill. 165; Koons v. Lucas, 52 Iowa, 177; Municipality v. Dunn, 10 La. An. 57; Estes v. Owen, 90 Mo. 113; State v. Mayor, 45 N. J. L. 482; In matter of Furman Street, 17 Wend. 650. The contract is not invalid as embracing within its terms an independent agreement to maintain and repair. The contract was authorized and approved by the council. State v. District Court, 33 Minn. 164. The assessments are valid. State v. District Court, 31 Minn. 354; State v. District Court, 33 Minn. 295. The city, under its charter, may in one and the same proceeding let a contract for paving and repairs, and levy an assessment to pay the cost of the same. More than one improvement may be embraced within one contract and paid for by one assessment. State v. District Court, 47 Minn. 406; State v. District Court, 33 Minn. 295; State v. District Court, 29 Minn. 62; Morse v. City, 110 Mo. 502; Gibson v. Owens, 115 Mo. 258; Williams v. Mayor, supra. The provisions of the contract relative to repairs are merely incidental to the guaranty. Robertson v. City, 55 Neb. 718; State v. Inhabitants, 60 N. J. L. 394; Barber v. Ullman, 137 Mo. 543; Seaboard v. Woesten, 147 Mo. 467; Osburn v. City, 104 Iowa, 160; Allen v. City, 107 Iowa, 90; Cole v. People, 161 Ill. 16; Latham v. Village, 168 Ill. 153; City v. Trustees, 66 Hun, 179; Gilmore v. City, 131 N. Y. 26; Barber v. Hezel, 76 Mo. App. 135; City v. Henderson, 5 Bush, 515; City v. Dressman, 6 Bush, 210. Even though the contract contains an independent agreement to repair, such agreement does not vitiate the contract and the assessment therefor. Barber v. Ullman, supra.

COLLINS, J.

1. In the brief of relators' counsel we find the following clear and concise statement of this case, and of the objections on which they rely. As it cannot be improved upon, we incorporate it bodily into this opinion:

"This is a proceeding instituted by the city treasurer, under the

provisions of the charter, to obtain judgment against certain real estate for the amount of an assessment made by the board of public works of the city of St. Paul on account of the paving with asphalt of Cedar street from the north line of Second street to the north line of Summit avenue. * * * The objections in the court below were all tried together as one case, the several objectors uniting in the argument, and they all attack the assessment and resist the application for judgment upon the same grounds. The grounds for their attack, briefly stated, were and are as follows:

"(1) It conclusively appears that the board of public works made an arbitrary front-foot assessment, without regard to benefits: (a) The streets intersecting Cedar street were benefited by the improvement, and these intersections should have been considered as property, and should have been assessed their proportionate share of the costs; (b) all street intersections between Eighth street and Summit avenue were paved in the making of this improvement, and none were paved between Eighth and Second streets. * * *

"(2) The cost of paving street intersections should have been partially borne by property abutting on the intersecting streets.

"(3) The St. Paul City Railway Company should have borne a portion of the cost of the pavement, because (a) a portion of their right of way was paved, and this was a benefit; (b) this was provided for in the contract.

"(4) The contract and the amount assessed providing for repairing Cedar street for a term of ten years, and this was unauthorized, and no authority in law can be found to compel property owners to pay for repairs before the necessity therefor can be shown to exist.

"(5) This was, in fact, a repavement, and no authority exists under the charter to assess for a repaving."

The position finally taken by counsel, and obviously correct, if these objections are well taken, is that the proceeding is the taking of property without due process of law, and is repugnant to the fourteenth amendment of the constitution of the United States.

2. Taking up these objections seriatim, we are to inquire first whether, from the return made by the court below, which contains

none of the oral testimony there received, it appears, as asserted, that the board assessed for the cost of the improvement upon the front-foot plan or basis, and without regard to benefits.

This improvement consisted in paving with asphalt the street known as "Cedar," as before stated, from Second street, near the Mississippi river, to Summit avenue,—a point near the new capitol site; the pavement being of a uniform width, and 7,354 feet in length. Of this there was a total lot frontage of 6,034 feet, and a total street frontage, by reason of intersecting streets, of 1,320 feet. The assessment was uniform per front foot against each lot abutting on Cedar street from one end of the improvement to the other, and no other lots were assessed. It amounted to $5.396 per foot of lot frontage,—a trifle less than $5.40 a foot; and, of course, if we multiply the number of feet by the amount of the assessment per foot, we obtain as a result a sum exactly equal to the total cost of the improvement as fixed in the contract with the party who did the work. But the fact that the assessment was uniform per front foot as against each abutting lot does not demonstrate, nor does it tend to prove, that the assessment was made without regard to benefits. Its tendency is to show that each and every lot along the entire improvement was benefited equally and exactly the same per front foot, hence the assessment should be precisely the same.

The state constitution (article 9, § 1), as amended in 1881, authorizes the enactment of general or special laws with reference to assessments for local improvements, and the charter provisions under which such assessments are made in St. Paul are that an assessment may be made for local improvements upon property fronting upon said improvements, or upon the property benefited thereby; that such assessment may be made for grading, filling, leveling, paving, curbing, walling, bridging, graveling, macadamizing, planking, opening, extending, widening, contracting, altering, and straightening any street, levee, alley, or highway; that "the expenses of any improvements mentioned in the foregoing section shall be defrayed, save as herein otherwise provided, by an assessment upon the real estate benefited thereby, or by an assessment upon the real estate fronting thereon"; and that such real estate must be assessed as nearly as may be in proportion

to the benefit resulting thereto. See Sp. Laws 1887 (pp. 333, 343) c. 7, subc. 7, tit. 1, §§ 1, 2, 3, 23, as amended by Sp. Laws 1889, . p. 586. When we turn to the return in this case, we find that the lower court has found and certified that:

"Upon the trial the members of the board of public works of the city of St. Paul were called as witnesses, and testified as to the manner in which the assessment under consideration was made; and it appeared from their testimony that, in their judgment, the property specially benefited by the improvement under consideration was confined wholly to the various lots and tracts of land abutting upon said Cedar street, between the north line of Second street and the north line of Summit avenue, and the board so determined, and found that this property was specially benefited, at least, to the extent of the cost of the entire improvement, including the incidental cost of levying and collecting the assessment. This frontage, not including street intersections or abutting streets, was shown to amount, in all, to a total of 6,034 $^1/_{100}$ lineal feet; and the board proceeded to apportion the entire amount of said assessment of benefits, being the entire cost of the improvement, to said total lot frontage, so that the amount assessed against each lineal foot of each of said several lots and parcels of land was the amount of $5.396 per front foot, the board having duly determined that all of said property was equally benefited specially by said improvement."

And this finding is to be construed and conceded with reference to what has been repeatedly held, as was said in State v. District Court, 68 Minn. 242, 245, 71 N. W. 27:

"That under the charter of the city of St. Paul the judgment of the board of public works as to what property is benefited, and how much it is benefited, is final and conclusive, and cannot be reviewed by the courts unless it is shown to be fraudulent in fact, or to have been made up upon a demonstrable mistake of fact, or that in making it the board of public works applied an illegal principle or an erroneous rule of law."

The board found that the property specially benefited by the improvement was wholly that abutting upon that portion of Cedar street which was to be improved; that this property was specially benefited, at least to the extent of the cost thereof, including the incidental cost mentioned; and that all of said property was equally benefited by said paving. This judgment and determination of the board is, as we have seen, final and conclusive, unless it is

shown to be fraudulent in fact, or made up on a demonstrable mistake of fact, or that in making it the board applied an illegal principle or an erroneous rule of law.

We have already stated the position of counsel as to this, in substance: First, that all intersecting streets should have been considered as property benefited by the improvement, and should have been assessed accordingly; second, that the intersections actually paved were a special benefit to intersecting streets, and lots in those streets should have paid their proportionate share of the cost of paving these intersections; third, that in any event, the corner lots which abut both on Cedar street and the intersecting streets, where the intersections were paved, should pay a greater proportion of the cost of the improvement than lots which have a frontage on Cedar street only, and that it was error for the board of public works, in making the assessment, to ignore the fact that the cost of improvement did not include the paving of intersections upon the south half of the improvement, or all south of Eighth street, and did include the cost of paving all intersections on the north half of the improvement, or from Eighth street to Summit avenue, both inclusive.

Now, the answer to all this, with the exception of what may be considered as a single point, is that, on the oral testimony received at the trial below, the court found against the objectors, and that the property benefited to the full amount of the cost of this improvement was that, and that only, against which the board assessed the cost thereof. Evidently it was not made to appear at the trial, and surely it has not been shown by anything we find in the record, that as to intersections at streets, which intersections were paved under this contract, or lots which cornered on these streets and Cedar street, or as to property which abutted on these intersecting streets only, not on Cedar, there was any demonstrable mistake of fact in making the assessment entirely against the Cedar street property, or that the board applied any illegal principle. And it has not been suggested that when making the assessment the board acted fraudulently, or applied an erroneous rule of law.

We have excepted one point made by counsel from the foregoing

statement. A plat of the improvement, known as the "Scale Plan," was introduced in evidence below, and has been made a part of the return here. It appears from this that the paving commenced at the west line of Second street. No part of the intersection with Second street was paved. Nor were the intersections north, with Third, Fourth, Sixth, and Seventh streets paved under the contract. Fifth street and all others north of Seventh (several in number) were wholly paved. Because of this fact, which appears from the plat, and the further fact that the assessment was uniform per front foot along the entire improvement, objectors' counsel insist that it is shown and demonstrated to a mathematical certainty that there was a mistake of fact which vitiated the entire assessment; in other words, that there was a demonstrable mistake when the board ignored the fact that the cost of the improvement did not include the paving of intersecting streets upon the south half of the improvement, and did include the paving of intersecting streets on the north half thereof.

The presumption is that the board of public works has exercised its proper judgment, even though it has apparently indulged its discretion, in levying the assessment for any particular local improvement; and until something appears in the record itself which amounts to a demonstrable mistake of fact, and of an affirmative nature, by way of evidence to the contrary, the action of the board is final and conclusive, except in case of fraud, or where it appears that an illegal principle or an erroneous rule of law has been applied. There is nothing before us which indicates why the intersections upon the south half of Cedar street were not included in the contract, and paved with the remainder of that thoroughfare. We cannot presume that such intersections were and are unpaved; for we have no right to assume that, in making this improvement, Cedar street was left incomplete, unfinished, and unpaved where it crossed the streets before mentioned. To give weight to the suggestion that at some time in the future these intersections will have to be paved, wholly or in part, at the expense of the owners of the abutting corner lots already assessed for the improvement, we should, in fact, be assuming that these intersections were and are unpaved, which, as before stated, we cannot do. And probably

we have no right to assume that these intersections were paved when this improvement was ordered, and for that reason paving at those points was unnecessary. But if we had this right, and could so assume, in the absence of proof, we could not go further, and assume, as we would be obliged to do, that a part or all of the cost thereof had been borne by the owners of the lots now proceeded against. More than this, as against the finding as to benefits, we have the fact, only, that, for some unexplained reason or cause, the contract based upon the scale plan we have mentioned did not include and cover the paving of about half of the intersections with other streets. This fact alone cannot be permitted to overcome the presumption arising from the finding that there was evidence which justified the board in concluding that the lots on the south half of the improvement were in fact benefited equally with those on the north half, although intersections were not included in the paving plan on the south half, but were on the north.

The fact on which counsel rely, standing alone and by itself, does not, as counsel argue, conclusively demonstrate that the assessment was made either upon a mistake of fact, or upon an arbitrary front-foot basis, and with a total disregard as to special benefits for each particular lot. Counsel might have shown by proper evidence that, in assessing each lot of the same width the same sum, there was inequality which would vitiate the assessment, because intersections on one half of Cedar street were provided for, while those on the other half were ignored. They might have shown by satisfactory proof that the lots abutting on the south half were not specially benefited per front foot to the same amount as were those abutting on the north half, because of the condition of those intersections. But nothing of the kind appears to have been attempted. From the return to this court it appears that to the court below it was made to appear that the board carefully considered the assessment district, which was to be laid out by them, and that, in their judgment, the only property to be included in it, as specially benefited, was that fronting on Cedar street, and also that the board duly determined that all of the property was equally benefited, specially, by the improvement, at least to the extent of the expense incurred. To enable these objectors to succeed in their contention

on this point, it was essential that the inequality of the assessment be made to appear in some other manner than by the introduction of the plan or plat. That alone does not overcome and overturn the finding, for there may have been an abundance of reasons for determining that all of the property abutting on this improvement was equally and uniformly benefited. As is said by counsel for the city:

"It is immaterial, then, that the assessment figures out to an equal amount for each foot of property fronting on the street. Once the board had determined that all property fronting on the street was specially and equally benefited,  *  *  *  the only rule which would be even arithmetically correct, by which the ratio of responsibility could be determined, would be the front-foot rule. *  *  *  To say that all property is benefited alike per front foot is not in itself any more erroneous than to say that two pieces of property are benefited alike per front foot."

3. The point that the exemption of the street-railway company from any share of the cost of the improvement vitiated the assessment might have been of some importance, if the objectors had shown that such company occupied Cedar street under an agreement to pave any part thereof. The occupation, and that no deduction had been made on account thereof, stood admitted; but, under the contract, there was to be no diminution because of such occupancy, unless the railway company agreed, when accepting a grant from the city of the right to occupy, to pave that portion of the street over which it actually ran its cars. To make the point available, it was, at least, essential for the objectors to prove such an agreement. It could not be inferred from the mere fact of occupancy.

4. It is contended that the contract for the improvement embraced within its terms an independent agreement to maintain and keep the street in repair for a period of ten years, and for this reason the assessment cannot be sustained. The provision of the contract on which this much of the objectors' argument is based is as follows:

"It is expressly agreed that the said party of the first part shall and will, and do hereby, guaranty the asphalt pavement constructed under this contract for a period of ten years from the date of

80 M.—20

the completion of the work herein provided for, and its acceptance by the board of public works of said party of the second part, and said party of the first part shall keep such asphalt pavement in good and sufficient repair during said period of ten years, repairing the pavement wherever settlements or irregularities causing a variation in the surface of three-eighths of an inch or over, measured within the length of a four-feet straight edge, or any cracks thereof three-eighths of an inch or over in width, or which show disintegration from any cause whatever, occur, and at the end of said period of ten years to turn over said pavement to said city in good order and condition, making all necessary repairs as specified above; and that if, during said period, it should be demonstrated that the material is defective, from overburning or improper mixing, or any other preventable cause, or that the workmanship has been done in an unskilful manner, the party of the first part shall, at their own cost and expense, upon an order of the board of public works, entirely remove any defective portion of the asphalt surface, and replace the same to the satisfaction of the said board of public works; and the said board shall be the sole judge whether or not said pavement is in good and sufficient order and condition during and at the end of said term; and if at any time within the period at which the pavement is guarantied by the said party of the first part as above specified, the said pavement shall, in the judgment of the board of public works, require to be repaired, the said board shall, through its engineer and clerk, notify the party of the first part to make the repairs required; and, if said party of the first part shall neglect to make such repairs within six days of the date of service of such notice, then said board shall have the right to cause such repairs to be made in such manner as they deem best, and the whole cost thereof shall be paid out of the special fund hereinafter mentioned.

It is further expressly agreed that for the purpose of assuring the performance of the work to be done under this contract, and the performance of the guaranty of keeping said pavement in good and sufficient order and condition for the term of years for which it is guarantied after its completion and acceptance by the board of public works, the said party of the second part will retain fifteen (15) per cent. of the entire cost of the improvement for ten years from the date of the completion and acceptance of the work, and said amount so retained shall be held by the party of the second part."

In the specifications attached to the contract, and made a part thereof, were similar provisions, and also

"That, whenever any repairs of the street are made necessary from the construction or repairs of sewers, or sewer connections, the laying of water or gas pipes, or water or gas connections, or re-

pairs thereof, or telegraph wires under the street, or repairs thereof, and for repairs of any of the same, or from any other disturbances of the pavement by parties acting under permits issued by the city or its authorized agents, or from other causes not due to defective material or workmanship, the contractor, on notification from the engineer of the board of public works, shall make all the necessary repairs in conformity with the specifications for this class of work. And, to this end, it is further agreed that the contractor shall have the right, and it shall be his duty, upon notice from, and under the direction of, the engineer of the board of public works, to make all repairs which become necessary by the construction of any of the public improvements above referred to, or by work done by private parties under permits issued by the city, during the period of said guaranty, or by other causes named above.

The cost of all such work or repairs as referred to in the preceding paragraph, which shall be done on said street after the completion of said contract work and its acceptance by said city, shall be paid for by the party or parties in whose interest and for whose benefit such work or repairs shall be done, at a price not to exceed ten per cent. in addition to the original cost per square yard of said pavement."

The city charter authorizes the letting of a contract for paving and for repairs, and the levy of an assessment for the cost thereof, in one and the same proceeding. Sp. Laws 1887 (p. 334), c. 7, subc. 7, tit. 1, § 2, as amended by Sp. Laws 1891 (p. 234); State v. District Court, 47 Minn. 406, 50 N. W. 476. It seems to be conceded here that, if the contract goes no further than to provide a reasonable guaranty for good material and workmanship, it may be upheld, but that if in fact it must be construed as imposing upon the owners of abutting lots the burden of repairs and maintenance for the term of ten years by actually, although indirectly, including the cost of repairs and maintenance for such a term in the original cost of construction, the assessment cannot be sustained, because the property owners would be compelled, not only to pay for the paving, but a sum in advance and in addition, for ten years' repairs and maintenance. Under the guise of paying the cost of construction, the city, according to all of the authorities, cannot collect a fund, to be used at some indefinite time in the future for repairs and maintenance. If repairs become necessary, or if money must be expended in maintaining the pavement after its completion, the city

must provide as the occasion arises and requires,—not when constructing, and when no one can foresee what may be demanded or when. See Portland v. Bituminous, 33 Ore. 307, 52 Pac. 28; Verdin v. City, 131 Mo. 26, 33 S. W. 480; Fehler v. Gosnell, 99 Ky. 380, 35 S. W. 1125; Boyd v. City, 92 Wis. 456, 66 N. W. 603; Brown v. Jenks, 98 Cal. 10, 32 Pac. 701,—as cases in which contracts and assessments for local improvements have been held, and clearly were, within the inhibition, and therefore invalid.

But if there was in this instance a mere guaranty of good material and workmanship, and if that is all these particular portions of the contract amounted to when properly construed, the latter may be upheld, and the assessment sustained. So it is a question of construction. The city had the right to secure by means of a guaranty, with sufficient protection for its fulfilment, a pavement which would prove firm and durable, not for all time, but for a reasonable time,—during what could be called its "life." It certainly could specify and guard against cracks or depressions which would of themselves show, if occurring within a certain period, that there was defect in either materials or workmanship. It could also protect itself against disintegration which in itself might well be considered evidence of poor materials or defective workmanship. Let us see if anything more than this was done, with a fair construction of the contract.

We find that the contractor guarantied the pavement for ten years from the date of its completion, and that it would keep the same in good and sufficient repair for the period of ten years, wherever settlements or irregularities caused a variation in the surface. It is quite evident, when such a variation appeared, that there was something wrong with the construction. Again, if cracks of a certain size occurred, the contractor was to repair. Surely a crack of this size could be attributed to defective materials or imperfect work. While the clause concerning repairs in case of disintegration simply provided that if any settlement, irregularity, or crack occurred, which showed (that is, was the result of) disintegration, from any cause, the contractor was to repair it, and thus comply with its proper and permissible guaranty. All disintegrations were not provided for, as argued by counsel for the

objectors; nor did the contractor stipulate that it would repair the pavement in all cases of disintegration. The agreement was simply to repair all settlements and irregularities which had caused a surface variation of three-eighths of an inch or more, and all cracks occurring which show disintegration. In effect, there is a guaranty that there shall be no disintegration for ten years on account of defective construction. This part of the contract cannot be construed as requiring the contractor to repair and replace in every instance of injury or removal, without regard to the cause thereof.

To construe a contract to repair as imposing upon the contractor the duty of repairing in all cases and under all circumstances would require very plain and unambiguous language. That which we have just considered falls far short of it. This is made clearer and more certain in stipulations, immediately following, for repairs which are made necessary because of defective workmanship or material, and are to be made at the contractor's expense, and other stipulations wherein disturbances of the pavement for legitimate purposes, or other disturbances "not due" to defective material or workmanship, are provided for. We are of the opinion that this part of the contract was nothing more than a perfectly proper guaranty, with provisions for its enforcement. It is in all essentials the same as the contracts considered and upheld in Barber v. Hezel, 76 Mo. App. 135; State v. City, 1 Mo. App. 503, 504; Barber v. Ullman, 137 Mo. 543, 38 S. W. 458; State v. Inhabitants, 60 N. J. L. 394, 38 Atl. 635; Robertson v. City, 55 Neb. 718, 76 N. W. 442; Osburn v. City, 104 Iowa, 160, 73 N. W. 650; Cole v. People, 161 Ill. 16, 43 N. E. 607; City v. Trustees, 66 Hun, 179, 21 N. Y. Supp. 147; City v. Hanson, 60 Kan. 833, 58 Pac. 474.

5. It is urged that the improvement in question is a repavement, and for that reason the city is without authority to levy an assessment upon benefited property for the cost of construction.

The finding of the court was that in 1887 Cedar street was paved with cedar blocks upon a plank foundation, the property fronting thereon being assessed its proportionate share of the cost. This assessed property included that of the present objectors. It was also found that this pavement had become worn out, decayed, rotten, and unfit for public use, and was at the time this proceeding

was instituted in such a worn-out and dilapidated condition as to necessitate the repaving of said street in order to put the same in suitable condition as a public street. Authority for the present assessment is found in the charter, if anywhere,—in that part of the charter (Sp. Laws 1887, c. 7, subc. 7, § 2, as amended by Sp. Laws 1889, c. 32, subc. 7, § 2) which reads:

"Such assessments may be made by said city of St. Paul for grading, filling, leveling, paving, curbing, walling, * * * widening, * * * contracting, altering and strengthening any streets, levee, lane, alley or highway."

Repaving is not expressly mentioned in this provision, but that it shall be is not important, under the authorities. The power to pave is given, and upon the exercise of this power no limitation has been imposed in the charter. There is no reason, therefore, why it should not be regarded and held to be a continuing power, which is not exhausted by its past exercise, but may be exercised from time to time whenever the public good requires. The approved rule is that, unless restrained by the charter under which the authority to impose special assessments is granted, that power is not spent when one improvement is made. It is a continuing power, and, whenever its exercise becomes again necessary by reason of the destruction or inutility of the original improvement, it may be again exerted. State v. Mayor, 45 N. J. L. 482; Gurnee v. City, 40 Ill. 165; Estes v. Owen, 90 Mo. 113, 2 S. W. 133; 2 Dillon, Mun. Corp. § 686; 24 Am. & Eng. Enc. 43, 44, and cases cited in notes. The doctrine stated was approved and applied by this court in Karst v. St. Paul, S. & T. F. R. Co., 22 Minn. 118, where it was held that general authority in a charter to establish the grade of a street was a continuing one, to be exercised as often as the public good required it. It is true that in Pennsylvania this rule has not been adopted, the leading case being Hammett v. Philadelphia, 65 Pa. St. 146; but in its position that state stands substantially alone.

Counsel also call attention to the fact that, by the charters of Minneapolis and some other cities, the power to repave is expressly given, and thereupon inquire, "Is further evidence needed that 'paving' and 'repaving' are not synonyms, as used in Minnesota

legislation?" The fact that one charter confers the right to pave and to repave, while the other is silent as to repaving, proves nothing, except that more caution was taken by the local members of the legislature from one city than by those of the other. The power of the city of St. Paul to compel a repavement of one of its streets at the expense of the owners of the property specially benefited thereby is not to be determined by the provisions of the charter of another city, but by what we find in its own charter. We cannot infer from the fact that assessments for repavements were expressly provided for in some charters, while nothing was said in others, that a marked and important distinction was intended on this subject.

Attention was called during the argument to the case of Village of Norwood v. Baker, 172 U. S. 269, 19 Sup. Ct. 187, as announcing the principle that all special assessments made on the basis of frontage are in violation of the fourteenth amendment to the federal constitution. That is not a fair construction of the decision. A very full and very able review of the case, and others in the supreme court of the United States on this subject, may be found in Webster v. City (N. D.) 82 N. W. 732. See also 14 Harvard Law Review, 1, 98.

We quite agree with counsel in their assertion that under municipal charters, and in all cases where the cost of an improvement may be levied upon the owners of specially benefited property, the burden is a very serious one, and borders closely upon confiscation. But these charter provisions are self-imposed, and, if wrong, there is an adequate remedy in the hands of those interested. The courts cannot relieve those who are unfortunate in having property to be assessed. At most, we can insist upon compliance with the statute in all matters of detail, in order to levy and collect. We are of the opinion that there was a compliance in this case, as the record now stands.

Writ quashed, and case remanded.