[City Council of Montgomery, et al. v. Barnett, et al.]

# City Council of Montgomery. *et al.* *v.* Barnett, *et al.*

*Bill to Declare Void a Paving Contract, and to Restrain Paying Same.*

(Decided Feb. 12th, 1907.   43 So. Rep. 92.)

1. *Municipal Corporations; Contract for Improvement; Special Assessment; Validity.*—The city charter required the treasurer to advertise for sealed bids for street improvement work, and that the contract be let to the lowest responsible bidder. An ordinance directed the officer to advertise for bids for street improvement according to plans and specifications on file in the city engineer's office, which plans and specifications required a two year's maintenance of the work. The advertisement published stated that only bids for ten years maintenance would be received. Held, under such published advertisement the city had no authority to close a contract for a two year's maintenance.

2. *Same.—Local Acts* 1900-01, pp. 1027 and 1029, authorizes the city to make street improvement and to levy assessments therefor, and to issue bonds for the purpose of improving the streets, the proceeds to be applied only to the paving or improvement designated by the ordinance. The ordinance passed provided for the paving of a certain street, the cost to be assessed against the abutting property to the amount that it had been benefited by the paving. Held, neither the act nor the ordinance authorized any contract for future maintenance, or the appropriation of any money raised from the sale of such bonds towards the payment of such a contract or any part of it, and such contract was void and proceedings thereunder would be enjoined at suit of tax payer.

APPEAL from the Montgomery City Court.
Heard before Hon. A. D. SAYRE.
Bill by G. W. Barnett, et al., as tax payers, against the city of Montgomery, et al., to declare a contract for paving void and to enjoin paying any money therein.

C. P. McIntyre, and Steiner, Crum & Weil, for appellant.—It is a well established doctrine that the court will not interfere and set aside the contract for municipal improvement for the reasons alleged in this bill, in the absence of fraud or corruption.—20 A. & E. Ency. of Law, pp. 1165-66 and 67; 1 Smith on Municipal Corporations, section 746. The contention made by complainants here was made and considered adversely to them in the case of Wilson v. Trenton, 68 Am. St. Rep. 714.

Martin & Martin, for appellees.—The contract was different as awarded from the one advertised. This renders it invalid.—20 A. & E. Ency. of Law, 1169; Inge v. Board of Public Works, 135 Ala. 187. A contract by the city with the paving contractor for future repairs is ultra vires and void.—Inge v. Board of Public Works, supra; Portland v. Bitumenous Paving Co., 72 Am. St. Rep. 713; Brown v. Jenks, 98 Cal. 10; Alemeda Co. v. Pringle, 80 Am. St. Rep. 124; Blochman v. Spreckle, 67 Pac. 1061.

SIMPSON, J.—This bill was filed in the city court in equity of Montgomery by the appellees, as owners of property on Hull street and as taxpayers of the city of Montgomery, seeking to have declared null and void a certain contract of paving said street, to restrain the city council from paying out any money thereon, and from issuing certain bonds, and from fastening on the property of complainants any assessment or liability on account of said improvement. The act of the Legislature authorized the city council to pave, or otherwise improve said street (with others). The city charter requires: "It shall be the duty of the city treasurer to advertise for sealed bids for doing all such work as the council shall determine to let out on contract. The award of each contract shall be made to the lowest responsible bidder, who shall comply with such reasonable regulations as may be prescribed before the bids are called for." The city ordinance recited the fact that "the cost of the said paving is to be assessed against the property abutting on said street to the amount that such

property has been benefitted by such paving or improving, not to exceed the increased value of said property, by reason of the special benefits derived from such improvement," and directed the city treasurer to advertise for bids for paving the streets "in accordance with the specifications in the office of the city engineer." The treasurer did so advertise, stating that "bids on asphalt and bitulithic pavement are requested both with a five and ten year guaranty"; and, all bids under that notice having been rejected, the bill alleges that the city council then ordered a new advertisement, and that "only bids for ten years' maintenance be received." Accordingly, the treasurer advertised for bids, stating "all bids to be of ten years' guaranteed maintenance." Said advertisement also stated in a previous part of it that the street was to be paved with either vitrified brick, etc., "all according to plans and specifications on file in the city engineer's office."

The paper which is referred to as "plans and specifications" described in detail the manner in which the paving is to be done; that bond shall be given and bids must be on the blank form, which follows, and which goes more minutely into details, and provides that the "party of the second part further agrees that for a period of two years from the date of the final estimate of the said work he will keep in good order and repair all the work done under this contract, except only such part or parts of the work as may have been disturbed after the final estimate of the same, glazing, sewers, etc., and that, whenever directed by said engineer," said party would proceed to repair. This is the contract which was signed. The complainants, both as taxpayers of the city and as persons whose property is liable to the assessment provided for, have the right to invoke the aid of a court of equity to restrain the execution of contracts and the fastening of obligations and liens upon the taxpayers of the city, if there be no authority of law therefor. The object in advertising for bids is to bring about competition, and thus get the best offer that can be obtained, so as to be able to select the lowest and best bidder, as the law directs. It is manifest, then, that in order to accomplish the purpose the advertisement and

the bids must correspond. As said by this court in another case: "To require the bids upon one basis, and award the contract upon another, would in practical effect be an abandonment of all bids."—*Inge v. Board of Public Works,* 135 Ala. 187, 200, 33 South. 678, 682, 93 Am. St. Rep. 20.

Having advertised for bids with a ten-year maintenance, the city was not authorized to close a contract with a two-year maintenance. It would be impossible to tell whether or not that was the lowest bid that could have been obtained, if the bidders had known that a two-year maintenance would be accepted.—20 Am. & Eng. Ency. Law, p. 1169. The appellant claims that, inasmuch as the advertisement refers to the plans and specifications on file in the engineer's office, bidders could learn from that that only a two-year maintenance clause would be required. Even if the clause in the latter part of the proposed contract could be construed as a part of the "plans and specifications" referred to, the whole paper is referred to only as a form; and, when the advertisement specially stated that a ten-year maintenance clause would be insisted on, we cannot see how it could be understood otherwise than that, while the form of the contract would be adhered to, and the specifications as to the character of the material and work would be insisted on, yet that the maintenance clause should be for ten years, as stated in the notice, in place of two years, as stated in the form. Appellee also insists in his brief that the treasurer was not authorized to insert the ten-year maintenance clause in the advertisement; but it is so stated in the bill, and the submission and decree in this case was on the demurrer and motion to dismiss. Besides, when the accredited officer of the city published such a notice in the newspaper of the city, and the contract was made on bids which came in in response thereto, it must be presumed that the city acquiesced in the terms of the notice. At any rate, these were the terms on which bids were requested, and the only terms to which bidders could respond, and it may be that contractors who did not care to enter into a ten-year guaranty did not deem it necessary to examine the plans and specifications on file.

The act under which the city was proceeding authorized it to "issue bonds for the purpose of paving or otherwise improving the streets," and provided that "the proceeds arising from the sale of such bonds shall be applied only to the paving or improving designated in the ordinance providing for their issue." Loc. Acts 1900-01, pp. 1027, 1029, §§ 1, 5. The city ordinance, being "An ordinance to pave South Hull street," etc., provided that said street should be paved, and recites that, "as the cost of the said paving is to be assessed against the property abutting on said street, to the amount that such property has been benefited by such paving, or improvement, not to exceed the increased value of said property by reason of the special benefits derived from such improvement," and notifies persons interested that unless they file written objections within 30 days "the city council will proceed to issue the bonds to pay for the said pavement, and make a contract for such paving." It will be observed that neither the act nor the ordinance authorize any contract to be made for future maintenance, or any appropriation of the money to be raised by the sale of the bonds to the payment of any such contract.

Well-considered cases hold that, where a city is authorized to contract for paving its streets, it has no authority to incorporate in the contract an agreement for future maintenance.—*Portland v. Bituminous Paving Co.*, 33 Or. 307, 52 Pac. 28, 44 L. R. A. 527, 72 Am. St. Rep. 713, in which case it is said that such a contract "was calculated to increase the amount of the bid, by the estimated cost of such repairs" (page 30 of 52 Pac. page 717 of 72 Am. St. Rep. [33 Or. 307, 44 L. R. A. 527]) ; also, "a burden was undeniably imposed upon the adjacent property beyond such as was authorized by the charter" (page 30 of 52 Pac., page 717 of 72 Am. St. Rep. [33 Or. 307, 44 L. R. A. 527]) ; also, "the expense undertaken is indefinite and the property owner must pay for them in advance. * * * Then, it being contingent, he will be paying for repairs which may never be required" (page 31 of 52 Pac., page 717 of 72 Am. St. Rep. [33 Or. 307, 44 L. R. A. 527]) ; also, "there was an evident lack of statutory power for entering into a con-

tract for keeping and maintaining the street and pavement in repair, and consequently a want of legal authority to use the public moneys for that purpose." Page 31 of 52 Pac., page 718 of 72 Am. St. Rep. (30 Or. 307, 44 L. R. A. 527). —*Alameda Macadamizing Co. v. Pringle,* 130 Cal. 226, 62 Pac. 394, 52 L. R. A. 264, 80 Am. St. Rep. 124, in which case *Brown v. Jenks,* 98 Cal. 12, 32 Pac. 701, is quoted to the effect that "officers are provided and vested with the power and charged with the duty of seeing that such work is properly done. A bond cannot be substituted for the performance of this duty." Page 395 of 62 Pac., page 126 of 80 Am. St. Rep. (130 Cal. 226, 52 L. R. A. 264).

The case of *Wilson v. Trenton,* 61 N. J. Law, 599, 40 Atl. 575, 44 L. R. A. 540, 68 Am. St. Rep. 714, cited by counsel for appellant, states that the contention that such a contract enhances the price nominally charged for laying a good pavement "ignores the principle on which assessments for municipal improvements are levied in this State.' Property owners are not chargeable with the price of such improvements, but only with an equivalent for the special benefits they derive therefrom." And hence the court argues that, as the municipality must pay all over the fair cost of laying a good pavement, the plaintiff's complaint must be reserved until the assessment is made. But in the case now under consideration the contract is entire, so that it would be difficult, if not impossible, to tell what part of the price is for paving and what part for future maintenance. The ordinance treats the entire contract as the paving contract, and provides that the city council will proceed to issue the bonds to pay for the same. So far as the assessment is concerned, it may be true that, if the benefits should be found to be less than the actual cost, it would not increase the amount assessed, yet, if the benefits should be found to exceed the actual costs, it would affect the amount assessed, as the only limit then would be the actual cost, and, if that had been made more than it should have been, the property owner would have much more to pay than he was liable for. However, this bill is filed, not only in the capacity of abutting owners, but also as taxpayers, and under the authorities cited,

which we think are supported by sound reason, it is a question of power, and the city has no power to make the contract and to use the money, the proceeds of the sale of the bonds, in the manner proposed by the ordinance. The taxpayer has the right to enjoin the same. 20 Am. & Eng. Ency. Law, p. 1231.

The decree of the court is affirmed.

TYSON, C. J., and HARALSON and DOWDELL, JJ., concur.