# BARBER ASPHALT PAVING COMPANY *v:* CITY OF INDIANAPOLIS.

[No. 7,786. Filed March 5, 1913.]

1. MUNICIPAL CORPORATIONS.—*Public Improvements.—Contracts.— Guaranties of Work and Stipulations for Repairs.*—Where a contract for street improvement provided that the work should be done in such substantial manner that no repairs would be required for a period of nine years, that if such repairs became necessary the contractor would make good any damage to the work or any defect in the workmanship, materials, or condition of the work, which made such repairs necessary, that he would keep the work 'in good repair during that time, and make all repairs as directed, etc., that the guaranty should cover all repairs growing out of the imperfection or unsuitability of materials or composition, too great or too little moisture, defects in workmanship, extremes of heat or cold and other effects of climate, holes or cracks in the pavement, etc.; and that at the end of the guaranty period the pavement should be in good condition, present a surface so true and even that it would in no way be an obstruction to travel, and have such drainage that water could stand in no place to a greater depth than a quarter of an inch, such provisions are more than a guaranty against defects resulting from improper workmanship or unsuitable materials, and amount to a guaranty that the workmanship and materials which entered into the work were of such character that the street would withstand all the usual and necessary uses of travel for a period of nine years. pp. 593, 595.

2. CONTRACTS.—*Pleading.—Breach of Warranty.*—A breach of warranty, pleaded as a cause of action or defense, must, to be good

upon demurrer, aver the character and extent of the warranty, and the nature and particulars of the breach.   p. 595.

3.   MUNICIPAL CORPORATIONS—*Public Improvements.—Contracts.— Guaranties of Work and Stipulations for Repairs.—Breach.— Complaint.*—Where a street paving contract required that all repairs resulting from causes incident to the use of the street for public travel should be made by the contractor, a complaint, in an action to recover the cost of repairs made by the city, alleging that the wearing surface commenced to roll and wave and in many places the vehicles using said pavement in the ordinary course of travel cut through the wearing surface and the con- crete into the sub-grade of the street, that the pavement became deteriorated and so badly worn that it could not be satisfactorily patched, and that in order to put it in good repair as contem- plated in the contract, etc., it was necessary entirely to recon- struct and relay all the portion of the wearing surface above the concrete base, and in some places to repair the concrete base, shows that the defects were the result of breaches of defendant's guaranty contained in the contract sued on, and was sufficient. p. 598.

4.   MUNICIPAL CORPORATIONS.—*Public Improvements.—Contracts.— Guaranties of Work and Stipulations for Repairs.—Breach.—Evi- dence.—Sufficiency.*—In an action by a city against a contractor for the cost of street repairs rendered necessary within the guar- anty period, although there was evidence that such repairs were made necessary by the loss of lateral support due to the delay of a street car company in paving its portion of the street after the excavation therefor had been made, the decision for plaintiff was sustained by sufficient evidence and cannot be said to be con- trary to law, where there was evidence that the repairs were made necessary by the use of defective material and improper lateral support by the contractor and which tended to support all the material averments of the complaint.   p. 599.

5.   MUNICIPAL CORPORATIONS—*Public Improvements.—Contracts.— Guaranties of Work and Stipulations for Repairs.—Notice to Re- pair.*—Under a contract for street paving in which the work was warranted for a certain period, and by which the character and extent of the repairs were left to the board of public works, and the repairs were to be made to its satisfaction, where the notice to repair was given pursuant to a resolution and order of the board, and gave complete information of the action of such board, the fact that such notice required the complete resurfacing of the street, which was unnecessary, will not relieve the contractor from liability for the cost of repairs made by the city on his fail- ure to make them.   p. 602.

6. MUNICIPAL CORPORATIONS.—*Public Improvements.—Contracts.— Guaranties of Work and Stipulations for Repairs.—Retention of Guaranty Fund After Judgment for Repairs Made.*—Where by a contract for street paving, the contractor warranted the work and agreed to make such repairs as should become necessary, and the city was authorized to retain a portion of the contract price as a repair guaranty fund, a recovery by the city of the cost of resurfacing a portion of the street does not prevent it from holding the balance of the fund as a guaranty for the repair of other portions of the street until the end of the guaranty period. p. 602.

From Superior Court of Marion County (77,834); *John L. McMaster,* Judge.

Action by the City of Indianapolis against the Barber Asphalt Paving Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Morris M. Townley, David B. Gaun* and *George H. Peaks,* for appellant.

*Joseph B. Kealing, Merle N. A. Walker* and *Newton J. McGuire,* for appellee.

HOTTEL, J.—On October 23, 1905, appellee, City of Indianapolis, through its board of public works, adopted a preliminary resolution for the improvement of a part of one of its streets known as West Michigan street. Other preliminary and necessary steps were taken by such board leading up to the confirmation of the original resolution for such improvement. The notice required in such cases, inviting bids for the proposed improvement, was given, and the contract therefor was awarded appellant, May 21, 1906.

Pursuant to such award, appellant and appellee on May 23, 1906, entered into a written contract, whereby appellant, for approximately $58,000, agreed to improve said street with Trinidad Pitch Lake Asphalt according to the plans and specifications adopted by said board of public works. Appellant completed said improvement, and procured an acceptance thereof by said board of public works. About six months later defects, ruts and holes appeared in a portion of that part of the street so improved, and the condi-

tion thereof was such that said board of public works, by a resolution to that effect, ordered a resurfacing of said part of said street, and other repairs thereon, and that notice of the action of such board be given to appellant. After receiving such notice, appellant failed and refused to make such repairs, whereupon they were made by appellee.

This is an action by appellee to recover on its said contract for such repairs. The complaint sets out in detail the various steps taken by the board of works in connection with said improvement leading up to the letting of the contract to appellant, and avers the execution of said contract, a copy of which, together with a copy of the plans and specifications, is filed with and made part of such complaint.

It then avers the completion of the work within the time provided by the contract, the acceptance thereof by such board of public works, the adoption of the preliminary assessment roll on April 12, 1907, and the adoption of the final assessment roll on May 6, 1907, and that within about six months after such completion and acceptance of said improvement, it became so out of repair and in such condition that appellee, by its board of public works, determined that a resurfacing of the street was necessary, and served notice on appellant to make such repairs; that appellant failed and refused to make such repairs or any part thereof; that appellee resurfaced the part of the street in question at a cost to it of $10,763.83. Facts showing that appellant is entitled to a credit on account of material furnished appellee, and on account of certain bonds held and sold by appellee under said contract, are averred, and judgment asked for a balance still due of $865.51. A demurrer to this complaint for want of facts was overruled and exceptions saved by appellant.

Appellant filed a cross-complaint in two paragraphs, by the first of which it is sought to recover the sum of $5,811.60, with interest, for asphalt sold by appellant to appellee, and by the second paragraph it sought to recover the sum of

$4,086.72, on an implied contract to pay for certain bonds of appellants, wrongfully converted by the appellee. These items were the same as those set out in the complaint and admitted to be proper credits against the total cost of repairs made by appellee.

Appellant filed an answer to the complaint in two paragraphs, the first being a general denial. The second paragraph of answer admits the execution of the contract sued on, and sets out in detail the character of the improvement required to be made thereunder, the materials used therein and the manner of construction. The substance and effect of these averments in brief are that the asphalt surface required by such contract is of a semi-fluid nature, with a tendency to spread in warm weather, and requires a lateral support to prevent its displacement; that the binder course under such asphalt surface is porous in character, and readily admits the infiltration of water where the conditions are favorable, and that such infiltration tends to disintegrate and break up the pavement. It is then averred that the street to be improved under said contract was occupied by the Indianapolis Traction and Terminal Company; that under its franchise with the city it was the duty of such traction company to improve its portion of said street lying between its rails and for eighteen inches on the outside thereof, and to proceed with such improvement at the same time appellant was proceeding with its improvement; that appellant finished its portion of the improvement in 1906; that the traction company excavated the portion of street to be improved by it in the fall of 1906, and abandoned the work of construction, leaving the excavation in the center of said street until the summer or fall of 1907; that appellee took no steps to compel the traction company to proceed with said improvement; that the absence of the pavement which should have been put in by the street-car company made it necessary for appellant to construct a temporary lateral support for the improvement made by it; that for this pur-

592        APPELLATE COURT OF INDIANA,

Barber Asphalt Pav. Co. *v.* City of Indianapolis—52 Ind. App. 587.

pose appellant placed oak headers along the edge of its pavement and adjacent to the excavation made by the street-car company; that afterwards the street-car company, without appellant's knowledge, removed said headers, leaving the edge of the pavement adjacent to said excavation unprotected during the following winter and summer; that such excavation was full of water, which permeated appellant's pavement and caused it to become thoroughly watersoaked, with the result that the defects appeared therein which made necessary the repairs made by appellee on said improvement, for which the recovery herein is sought; that by reason of the foregoing facts appellant is not liable under its provision of guarantee for said repairs.

Appellee filed a reply in denial to the special paragraph of answer. The cause was tried by the court without a jury. The court rendered judgment for appellee on its complaint in the sum of $2,000, and for appellant on its first paragraph of cross-complaint in the sum of $6,291.05, and on the second paragraph of cross-complaint in the sum of $4,236.89. It was adjudged that the $2,000 recoverable by appellee should be deducted from the $4,236.89 recoverable by appellant on its second paragraph of cross-complaint, and that the balance of such sum recoverable by appellant on its second paragraph of cross-complaint, namely the sum of $2,236.89 should be retained by appellant and invested in municipal bonds to be held by appellee as collateral to secure the faithful performance of the remaining portion of appellant's warranty obligations. A motion for a new trial was overruled and exceptions properly saved by appellant.

Appellant moved to modify the judgment by striking out that portion thereof which authorized appellee to retain the said sum of $2,236.89, and to invest the same in bonds, etc. The errors assigned and relied on are as follows: (1) The overruling of appellant's demurrer to the complaint. (2) The overruling of appellant's motion for new trial. (3) The overruling of appellant's motion to modify the judg-

ment. In support of its contention that the trial court erred in its ruling on the demurrer to the complaint, appellant insists, in effect, that the provision in the contract for the improvement of the street in question, which obligated appellant to repair for a period of nine years, was in the nature of a warranty, by which appellant agreed to warrant the pavement for said period against defects resulting from improper workmanship or imperfect or unsuitable materials, and that appellant, by said contract, was not obligated to make general repairs for said period; that such being the effect of the contract, the burden was on appellant to allege and prove the specific facts constituting the breach of warranty relied on, and that the complaint in this case contains no such averments.

1. An intelligent presentation of the question thus presented requires us to set out the guaranty provisions of the contract sued on. They are as follows:

"Guarantee: The work shall be done in such a substantial manner that no repairs will be required for a period of nine years in the case of asphalt, * * * pavements. * * * Should repairs become necessary, however, during any such period, then the contractor will be required to make good any damage to the work or any defect in the workmanship, materials or condition of the work which may have occurred during said period, and which made such repairs necessary. * * * Said contractor shall keep such work in good repair during the time of the guarantee period and shall make all repairs at such time as directed by the Board of Public Works or the city engineer. It shall be the duty of said contractor to notify the Board of Public Works in writing at least thirty days prior to the expiration of the said guarantee period to inspect the work, and unless the contractor shall furnish such notice, the obligation to maintain the said work in proper condition shall continue in force until such notice shall have been furnished and for thirty days thereafter, and until such time as the contractor shall place said work in proper condition, if notified so to do within the thirty days' period. It is understood and agreed that this guarantee shall cover

594    APPELLATE COURT OF INDIANA,

Barber Asphalt Pav. Co. *v.* City of Indianapolis—52 Ind. App. 587.

all repairs growing out of the imperfection or unsuitability of materials or composition, too great or too little moisture, all defects in workmanship, extremes of heat or cold and all other effects of climate, and shall cover all other excessive deteriorations more specifically described as follows: In case of asphalt, * * * pavements, any holes or cracks in the same, and any defects resulting from the decomposition of the wearing surface or foundation. The pavement, at the expiration of the guarantee period, shall be in good condition, present a surface so true and even that it will in no way be an obstruction to travel, and have drainage so perfect that water may collect in no place to a depth of more than one quarter of an inch. * * *

'*Guarantee Repair Fund.*'

* * * The party of the first part hereby consents that the City shall retain, in street improvement bonds of said city, issued on account of said improvement, a sum equal to twenty (20) cents per square yard of pavement herein contracted for, which sum shall be and constitute a Repair Guarantee Fund, in the hands of the City, for the purpose of securing the repair and maintenance of said pavement by said party of the first part, to the satisfaction of the Board of Public Works of said city for a period of nine years from the date of the final estimate on said work, and that said pavement shall be so left at the expiration of said period. Should the improvement bonds issued on account of this improvement be insufficient to make the deposit herein provided for, the party of the first part shall deposit such other City of Indianapolis Improvement Bonds, in lieu thereof, as shall be satisfactory to the City Comptroller. It is hereby agreed that the face value of the bonds to be deposited shall at no time during the guaranty period, be decreased by the contractor to an amount less than twenty cents for each square yard of pavement contracted for. In the event the pavement during the guarantee period is being maintained and kept in repair by the contractor to the satisfaction of said Board of Public Works, then the contractor shall be permitted to receive and receipt, from time to time, for all maturing interest coupons, and at the end of such guarantee period, the bonds deposited, with all unpaid coupons, shall thereupon be delivered and turned over to said first party or assigns: *Provided, however,* That the contractor shall first receive

from said Board of Public Works a certificate that the said pavement is in good repair and condition to the satisfaction of said Board, but not otherwise.  In the event the pavement during the guarantee period is not in good condition and repair to the satisfaction of said Board, then said Board shall retain all bonds and coupons (principal and interest) until said pavement is so put in repair; and if the first party shall refuse or neglect to put the same in repair, to the satisfaction of said Board, on proper written notice from them—said notice to be at least ten days—said Board may cause the same to be done and collect all maturing bonds and coupons, and with the proceeds thereof pay for such repairs provided the amount so collected be sufficient, if not, said Board may sell all or a part of the bonds and coupons deposited to guarantee said pavement, and apply the proceeds to the making of said repairs, or such an amount thereof as it may deem necessary, retaining the remainder of said sum, if any, in said Repair Guarantee Fund for use in future repairs.  Should the cost of such repairs made by the order of the Board of Public Works exceed the amount collected on bonds retained as above, the party of the first part shall be held responsible to the City of Indianapolis for the amount of such excess and such excess shall be collected by suit from the contractor.  The contractor failing to make a satisfactory deposit on bonds, as required in this contract, will be permitted to deposit cash, in the sum of twenty cents for each square yard laid, subject to all restrictions and conditions named above as to the bond guarantee.'
* * * ''

''It is a well settled principle that a breach of warranty pleaded as a cause of action or defense must, to be good upon demurrer, aver the character and extent of the warranty, and the nature and particulars of the breach.''  Shirk v. Mitchell (1894), 137 Ind. 185, 188, 36 N. E. 850, and authorities cited.

The serious question in this case is not, therefore, whether the principle of law contended for by appellant is correct, but whether it should be applied to a pleading of the character here involved, and, if applied, whether the averments of the complaint substantially comply with its requirements.

Appellant relies on the case of *Shank* v. *Smith* (1901), 157 Ind. 401, 61 N. E. 932, 55 L. R. A. 564, in support of its contention that the provision of the contract in suit for the repairs of the street in question must be construed as a warranty rather than as an obligation on the part of appellant to make general repairs.

Appellant further insists in support of this contention that it is to be presumed that appellee and appellant when they entered into the contract for the improvement of the street in question intended to enter into a valid rather than invalid contract, and that if that construction of the contract be adopted which would obligate the contractor to make general repairs it would be equivalent to holding that the contract was invalid when executed, because the contract by its terms provided that the cost of the improvement was payable by special assessments, and appellee had no power to levy such special assessments for street repairs as distinguished from improvements, and that a "special assessment contract which included the making of general repairs would have been unenforceable."

As supporting this contention appellant relies on the following cases: *Shank* v. *Smith, supra; Portland* v. *Bituminous Pav. Co.* (1898), 33 Or. 307, 52 Pac. 28, 44 L. R. A. 527, 72 Am. St. 713; *Boyd* v. *City of Milwaukee* (1896), 92 Wis. 456, 66 N. W. 603; *Brown* v. *Jenks* (1893), 98 Cal. 10, 32 Pac. 701; *Alameda Macadamizing Co.* v. *Pringle* (1900), 130 Cal. 226, 62 Pac. 394, 52 L. R. A. 264, 80 Am. St. 124; *Excelsior Pav. Co.* v. *Leach* (1893), 34 Pac. (Cal.) 116; *McAllister* v. *City of Tacoma* (1894), 9 Wash. 272, 37 Pac. 447; *Verdin* v. *City of St. Louis* (1895), 131 Mo. 26, 33 S. W. 480, 36 S. W. 52; I Page & Jones, Taxation by Assessment §516; *Young* v. *City of Tacoma* (1903), 31 Wash. 153, 71 Pac. 742; *City Council, etc.,* v. *Barnett* (1907), 149 Ala. 119, 43 South. 92; *Barfield* v. *Gleason* (1901), 111 Ky. 491, 63 S. W. 964; *City of Louisville* v. *Selvage* (1889), 106 Ky. 730, 51 S. W. 447, 52 S. W. 809; *Gosnell* v. *City of Louis-*

*ville* (1898), 104 Ky. 201, 46 S. W. 722; *State, ex rel.,* v. *District Court, etc.* (1900), 80 Minn. 293, 83 N. W. 183; *People, ex rel.,* v. *Maher* (1890), 9 N. Y. Supp. 94, 56 Hun 81; *Fehler* v. *Gosnell* (1896), 99 Ky. 380, 35 S. W. 1125; *City of Kansas City* v. *Hanson* (1898), 8 Kan. App. 290, 55 Pac. 513; *Scranton City* v. *Sturges* (1902), 202 Pa. St. 182, 51 Atl. 764; *Bradshaw* v. *City of Jamestown* (1908), 109 N. Y. Supp. 618, 125 App. Div. 86.

While there seems to be some difference in the wording of the repair provisions of the contract construed in the case of *Shank* v. *Smith, supra,* and the wording of the one here involved, yet, the provision there in question and construed by the court was so nearly identical with this that we would feel bound by that construction. In so far as that decision holds that the provision should not be construed as an obligation to make general repairs, it is supported by authority. *People, ex rel.,* v. *Featherstonhaugh* (1902), 172 N. Y. 112, 64 N. E. 802, 60 L. R. A. 768; *McGlynn* v. *City of Toledo* (1901), 22 Ohio C. C. 34, affirmed *Toledo* v. *McGlynn* (1902), 67 Ohio St. 498, 67 N. E. 1103; *Lindsey* v. *Brawner* (1906), 29 Ky. Law Rep. 1236, 97 S. W. 1; *Barber Asphalt Pav. Co.* v. *City of Louisville* (1906), 123 Ky. 687, 97 S. W. 31, 9 L. R. A. (N. S.), 156 with notes; *Owensboro City R. Co.* v. *Barber Asphalt Pav. Co.* (1908), 107 S. W. (Ky.) 244, 14 L. R. A. (N. S.), 1217.

Assuming then that the provision in the contract in suit was one of guaranty or warranty, and not one to repair generally, Are the averments of the complaint sufficient?

The complaint in question sets out the entire contract, including the guaranty, and therefore meets the requirements of the rule before announced, which requires the pleading to allege the nature and extent of the warranty, so that the only question to be determined is whether the averments are sufficient to show a breach of such warranty.

The provision here involved, even though construed as a guaranty, was more than a guaranty against defects result-

ing from improper workmanship or unsuitable materials. It was, in effect, a guaranty that the materials and the workmanship which entered into the construction of such street were of such a character that they would withstand any and all the usual and necessary uses of travel to which such street might be subjected for a period of nine years, and at the end thereof would be "in good condition and present a surface so true and even that it would be in no way an obstruction to travel, and have a drainage so perfect that water would collect in no place to a depth of more than one quarter of an inch." This provision contemplated that all holes and defects of every kind or character appearing in said street within said guaranty period, resulting from any and all proper use and travel of said street, should be repaired and made good by appellant. The guaranty is in effect a covenant obligating the appellant to make, within the period designated, any and all repairs resulting from any and all causes incident to the use of the street for public travel, and covers all repairs except those resulting from fire, flood or other act of God or some extraneous cause in noway connected with the usual and proper use of such street for travel.

This being the effect and scope of the guaranty here involved, whether the burden was on appellee to allege in his complaint and prove on the trial a negative, viz.:

3. that the defects in the street, which necessitated the repairs sued for, were not the result of causes extraneous to and independent of its use for travel, or whether this was a defense to be set up and proved by appellant, may, we think, be open to serious question, but in view of the averments of this complaint we need not and do not decide this question.

The averments of this complaint in this respect are, that after the completion of said work under said contract, and after the acceptance thereof by said board, the wearing surface of said street pavement between Blake street on the east and the White river on the west, being about twelve

street squares, "commenced to roll and wave *and in many places the vehicles using said pavement in the ordinary course of travel* on said *public street cut through the wearing surface and the concrete into the sub-grade of said street* (our italics) ; that said pavement deteriorated so badly that by the early spring of the year 1908, the same was almost entirely worn out and was in such condition that it could not satisfactorily be patched and that in order to put said pavement   *   *   *   into good condition and repair as contemplated and required in said contract and said plans and specifications for the construction of said pavement and fit and suitable to be used by the traveling public, it became and was necessary entirely to reconstruct and relay all the portion of the wearing surface above the concrete base of said pavement and in some places to repair and construct portions and reconstruct portions of said concrete base."

We think it affirmatively appears from these averments that the part of the pavement resurfaced by appellee, for which this recovery is sought, was in such condition before it was resurfaced that it would not and did not withstand the ordinary travel thereon, and that the defects which made such resurfacing necessary were such as were contemplated by the guaranty provision in appellant's contract. The character of the averments are such that the only reasonable inference deducible therefrom is that the defects, which necessitated the repairs sued for, were the result of breaches of appellant's guaranty contained in the contract sued on and set out and made part of the complaint.

The complaint in the respect indicated is clearly sufficient under the recent holding of the Supreme Court in the case of *Domestic Block Coal Co.* v. *De Armey* (1913), 179 Ind. ——, 100 N. E. 675, 102 N. E. 99.

4. This same question is presented in another form in the discussion of the assigned error presented by the motion for a new trial. The grounds of this motion are that (1) the decision of the court was contrary

to law, and (2) the decision of the court is not sustained by sufficient evidence.

It will appear from the averments of appellant's answer before set out, that it proceeds on the theory that the defects in the street in question, which necessitated the repairs made thereon, were the result of the acts and conduct of the street-car company, and that such repairs were not made necessary on account of any defect in the material or workmanship in the original construction of the paving material. Appellant, in its discussion of the ruling on the motion for a new trial, insists that on the issue presented by this answer the decision of the court is not sustained by sufficient evidence and is contrary to law.

There is considerable evidence which supports appellant's contention that the defects in the street in question, which made necessary the repairs for which appellee seeks a recovery, were due to, and the result of, the character of the lateral support placed along the edge of the part of the street improved by appellant, and adjacent to that part of the street excavated by the street-car company, and to the after removal of such support by the street-car company, thereby leaving appellant's improved part of the street without lateral support and exposed to the infiltration of water collected in the excavated part of said street. The evidence, however, does not disclose that appellee, by reason of its contract with appellant, or by reason of the franchise which it granted the street-car company, was under any legal obligation to appellant to see that the street-car company proceeded with its work along with appellant, and that it furnished the lateral support necessary to keep the part of the street improved by appellant in proper condition and repair.

The terminal traction company could not be required to pave its tracks except on an order of the board of public works. The proof does not show that any such order had been made when appellant contracted with appellee. Appellant contracted with appellee with reference to the cor

NOVEMBER TERM, 1912.        601

Barber Asphalt Pav. Co. *v.* City of Indianapolis—52 Ind. App. 587.

dition and occupancy of the street in question as it existed at the time of entering into the contract. It knew that the street-car company occupied the part of the street covered by its tracks, and that, under its franchise, it was obligated to improve its part of such street when required to do so by the board of public works of said city.

The evidence discloses that appellant and the street-car company begun their improvement about the same time; that after the street-car company had excavated its part of said street preparatory to such improvement, it and appellant entered into some agreement, pursuant to the terms of which the street-car company furnished, and appellant placed in position, oak headers as a temporary lateral support for appellant's improved part of said street, to serve until the street-car company put in the permanent improvement necessary for such support. Under these facts, it is questionable whether, under the law, in a suit of this character by the city, appellant should be relieved from making the repairs involved, but the evidence in this case makes unnecessary the decision of this question.

The repairs on the part of the street in question, for which a recovery is sought, cost appellee $10,763.83, more than $5,000 of which sum was represented by material furnished by appellant and represented by the judgment which it recovered on its first paragraph of cross-complaint. Appellee recovered on its complaint only $2,000.

There was some evidence tending to show, or from which the court might reasonably infer, that a part of the repairs in question were made necessary both on account of defective material and improper lateral support put in by appellant. There was some evidence tending to support all the material averments of the complaint, and this is enough to prevent a reversal on the ground of the insufficiency of the evidence. For the reasons indicated we cannot say that the decision is contrary to law.

Some question is made because the notice served on ap-

pellant was a notice to repair by completely resurfacing the street, and it is claimed that the evidence shows that

5. such resurfacing was not necessary. This objection is not tenable. By the terms of appellant's contract the character and extent of the repairs were left to the board of public works, and the repairs were to be made to its satisfaction.

The complaint alleges and the proof shows that the notice was given after, and pursuant to, a resolution and order of such board; that such notice gave appellant complete information of the action of such board in the premises, and that after receiving such notice appellant wholly failed and refused to make such repairs or any part thereof.

Lastly, it is insisted that the court erred in overruling appellant's motion to modify the judgment. As before indicated this motion was to strike out that part of

6. the judgment rendered on the second paragraph of cross-complaint, which adjudged that the $2,000 recovered by appellee should be deducted therefrom, and that the balance—$2,236.89—should be retained by appellee and invested in municipal bonds, and held "as collateral to secure the faithful performance of the remaining portion of appellant's warranty obligations."

It is insisted that the court had no right to order the city to reinvest said funds and retain the same as collateral, etc.

Appellant would have some reason and ground for its contention if the repairs or resurfacing, for which a recovery is sought in this action, covered the entire part of the street covered by the contract for improvement, but such is not the case. Only a portion of that part of the street covered by the improvement contract is here involved. The guaranty period had several years yet to run, and the part of the street not involved in this action might get out of repair and defective, requiring additional expenditure therefor.

It is insisted by appellant that the guaranty is a single,

entire and inseparable obligation, and that the present judgment bars any future action to enforce it. Authorities are cited to support this contention, but we can find nothing-in any of the cases cited that would furnish any justification for our holding that the guaranty in this case does not apply to that part of the street improved which was in no way involved in this litigation. We think this part of the judgment entirely proper, and within both the spirit and letter of the provision of the guaranty here involved.

Judgment affirmed.

NOTE.—Reported in 101 N. E. 31. See, also, under (1, 3, 4, 6) 28 Cyc. 1056; (2) 9 Cyc. 728, 732; (5) 28 Cyc. Anno. 1056—New. As to parol evidence to show warranty outside of written contract, see 5 Am. St. 197.